J-S42044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                         :          PENNSYLVANIA
                         :

         v.                    :
                         :
                         :

JAMES ARTHUR CORBETT        :
                         :

        Appellant       :     No. 645 MDA 2025

Appeal from the PCRA Order Entered May 12, 2025
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002239-2019

BEFORE:   OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:        **FILED: FEBRUARY 26, 2026**

James Arthur Corbett ("Corbett") appeals from the order denying his first, timely petition under the Post Conviction Relief Act[1] ("PCRA"). We affirm.

On direct appeal, this Court summarized the underlying facts as follows:[2]

> On March 17, 2018, Alan Bocchini, Jr. [("Decedent"),] was found dead[, due to] an overdose of heroin and fentanyl. Police arrested [Decedent's] dealer, Kayleigh Hess [("Hess"),] and she confirmed that she had sold opioids to [Decedent] on the day of his death. Hess also informed police that she had purchased the drugs she sold to [Decedent] from Corbett, her dealer whom she knew by the name of "Sha."
>
> Detectives arranged for Hess to make two controlled purchases on [consecutive days,] August 28 and August 29, 2018 from "Sha"; on each occasion, she purchased ten packets of a

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

[2] For ease of discussion, we have amended the Superior Court memorandum's references to "Appellant" to "Corbett."

white substance that tested positive for fentanyl and acetyl fentanyl, a fentanyl derivative.

Detectives also worked with another confidential informant, Linda Johnson [("Johnson")], who bought drugs from Corbett, whom she knew as "D." Johnson performed two controlled purchases from Corbett on August 29[, the same day as the second purchase by Hess,] and October 16, 2018. [Corbett sold to Johnson, respectively,] ten packets of fentanyl and acetyl fentanyl and . . . ten glassine bags containing fentanyl.

*Commonwealth v. Corbett*, 279 A.3d 1280 (Pa. Super. 2022) (unpublished memorandum at 1-2) (footnote omitted and paragraph break added), *appeal denied*, 289 A.3d 520 (Pa. 2022).

In connection with Decedent's death, the Commonwealth charged Corbett with: drug delivery resulting in death, conspiracy to commit drug delivery resulting in death, possession with intent to deliver a controlled substance ("PWID"), and conspiracy to commit PWID. Additionally, the Commonwealth charged Corbett with four counts of PWID, relating to the two controlled purchases each with Hess and Johnson. Finally, the Commonwealth charged Corbett with corrupt organizations and conspiracy to commit corrupt organizations, for allegedly engaging in illegal drug activities with Hess and others.

J. Richard Robinson, Esquire ("Trial Counsel"), represented Corbett. Pertinently, Trial Counsel filed a pre-trial motion to sever the charges related to Decedent's death. The trial court denied this motion.

All of the above charges against Corbett proceeded to a jury trial in 2020. Hess testified regarding her purchase of drugs from Corbett, including

the two controlled drug purchases conducted by police. On two or three occasions, Hess accompanied Corbett and another man to New York to purchase drugs. At Corbett's direction, Hess "test[ed] the drugs" by injecting them and "giving [her] opinion on them." N.T., 9/14/20, at 254-55.[3] Hess acknowledged the Commonwealth's promise of favorable treatment in exchange for her testimony against Corbett. On extensive cross-examination by Trial Counsel, Hess agreed that she faced an aggregate maximum sentence of 232 years' imprisonment, but she had a pending plea agreement to serve a total sentence of one year less one day's imprisonment to two years less two days imprisonment, followed by seven years' probation.

Pertinently, Johnson died prior to trial due to a drug overdose. *See* PCRA Court Opinion, 5/12/25, at 5. At trial, however, the parties merely stated that Johnson was "unavailable." N.T., 9/14/20, at 528. York City Police Detective Clayton Glatfelter ("Detective Glatfelter") testified that Johnson told him that "she could purchase heroin from a [B]lack male [whom] she knew as D." *Id*. Johnson also described "D," the location of his apartment, and his car, and provided his telephone number. Detective Glatfelter noted this was the same number that Hess provided as Corbett's number.

---

[3] The cover sheet of the trial transcript indicates that it covers the proceedings from September 14 through September 18, 2020. For ease of review, we cite this transcript with the September 14, 2020 date only.

Detective Glatfelter testified that he oversaw Johnson's first controlled drug purchase, as well as Hess' two controlled drug purchases, all from Corbett. *See* N.T., 9/14/20, at 478-79, 493. Another detective testified that he arranged Johnson's second controlled drug purchase. Both detectives, as well as multiple officers, observed Corbett participate in these transactions or observed him present in the car in which the transactions occurred.

Corbett did not testify or present witnesses or evidence. His defense theory was that he did not sell any drugs and that Hess, an admitted drug dealer with a favorable plea deal, was not a credible witness.

Pertinently, the trial court offered to give an accomplice/polluted source jury instruction with respect to Hess. Trial Counsel declined this instruction. *See* N.T., 10/17/24, at 9.

The jury found Corbett not guilty of the charges relating to Decedent's death. However, the jury found Corbett guilty of the four PWID counts related to the controlled purchases to Hess and Johnson, as well as the corrupt organizations and conspiracy to commit corrupt organizations charges.

On October 22, 2020, the trial court imposed an aggregate sentence of twenty-three and one-half to forty-seven years' imprisonment. The court reviewed the pre-sentence investigation report ("PSI"), Corbett's history, and the nature of the offenses, including "the heinous nature of . . . using [Hess] as a lab rat to engage in human testing of deadly drugs." *Corbett*, 279 A.3d 1280 (unpublished memorandum at 20).

- 4 -

Corbett filed a direct appeal, challenging the sufficiency of the evidence and discretionary aspects of his sentence. This Court denied relief and affirmed the judgment of sentence. On December 14, 2022, the Pennsylvania Supreme Court denied his petition for allowance of appeal.

On February 24, 2024, Corbett filed a timely, counseled PCRA petition[4] by Zak Goldstein, Esquire. Corbett alleged Trial Counsel was ineffective for: (1) not moving to sever the charges related to Johnson's controlled drug purchase, as well as not appealing the denial of severance of the charges related to Decedent; (2) not requesting an accomplice/polluted source jury instruction with respect to Hess; (3) not raising a hearsay objection to Detective Glatfelter's trial testimony as to what Johnson told him; and (4) at the sentencing hearing, not presenting defense witnesses or objecting to the trial court's statements that Corbett sold drugs only for profit, and not to support his own drug use.

---

[4] Corbett did not file a petition for writ of *certiorari* with the United States Supreme Court. Thus, for PCRA purposes, his judgment of sentence became final at the end of the ninety-day period for him to seek *certiorari*, or March 14, 2023. **See** 42 Pa.C.S.A. § 9545(b)(3); **see also** U.S.S.Ct.R. 13. Corbett then generally had one year, or until March 14, 2024, to file a PCRA petition. **See** 42 Pa.C.S.A. § 9545(b)(1). As stated above, he filed the instant petition on February 24, 2024.

The PCRA court conducted an evidentiary hearing.[5] Trial Counsel testified that at the time of Corbett's trial, he had practiced law for thirty-three years, had practiced criminal law exclusively since 1998, and had participated in 350 to 400 jury trials.

Trial Counsel testified as follows with respect to Corbett's PCRA claims. First, Trial Counsel did not believe that a motion to sever the charges involving Johnson would have been successful, because the offenses arose from a single investigation related to the drug delivery resulting in death. Additionally, Trial Counsel did not pursue the trial court's denial of severance, of the drug delivery resulting in death and related charges, because counsel believed Corbett could not establish prejudice, as the jury found him not guilty of those charges. *See* N.T., 10/17/24, at 19-20.

Second, with respect to an accomplice/polluted source jury instruction, Trial Counsel testified that such an instruction would have been inconsistent with the defense theory that Corbett was not involved with Hess and that she fabricated her testimony. When asked whether the instruction would have allowed the jury to find that Hess was an accomplice of someone else, not Corbett, Trial Counsel disagreed. Trial Counsel further opined that requesting a modification of the instruction to this effect would have been improper, as a

_____

[5] The Honorable Craig Trebilcock presided over Corbett's severance motion, trial, and sentencing. The Honorable Amber Kraft presided over the underlying PCRA proceedings.

finding that Hess and Corbett were accomplices was "a substantial part of the charge." *Id*. at 11.

Third, Trial Counsel testified that he did not object to Johnson's alleged hearsay statements, presented through Detective Glatfelter's testimony, because in his experience, trial courts routinely permit limited testimony about information provided by confidential informants to explain police conduct. Trial Counsel further explained that he sought to avoid any reference to Johnson's death, out of concern that the jury might draw improper inferences between her death and Corbett.

Finally, with respect to Corbett's sentencing claim, Trial Counsel stated the following. After trial, he and Corbett met and discussed the pre-sentence investigation ("PSI") report. Although Trial Counsel had talked with Corbett's mother, he did not recall any conversations about presenting defense witnesses at sentencing. In any event, Corbett had "absolutely denied" to Trial Counsel that he sold drugs, and their defense at trial was that Corbett did not sell drugs at all. *Id*. at 27. Thus, any argument, that Corbett sold drugs to support his own drug use, would have been contradictory. Additionally, such an argument would not have been persuasive, where "a substantial part of" the trial court's reasoning for the sentence was Corbett's "tak[ing] advantage of Hess because Hess was a drug user," and treating her "as a test dummy . . . with no regard for her safety." *Id*. at 25-26. Although the PSI indicated that Corbett himself reported using crack cocaine daily and

marijuana, "there was no connection [between] the use of marijuana and crack [and the] distribution of heroin and fentanyl." *Id*. at 26-27 (unnecessary capitalization omitted).

Finally, at the PCRA hearing, Corbett called his sister, brother, and friend, who stated they would have testified on his behalf at sentencing. Corbett himself did not testify at the PCRA hearing.

On May 12, 2025, the PCRA court issued the underlying order and opinion, denying Corbett's PCRA petition. Corbett filed a timely notice of appeal, and he and the PCRA court have complied with Pa.R.A.P. 1925.

Corbett raises four issues for our review:

1. Was [Trial C]ounsel ineffective in his handling of the motion to sever for failing to move more specifically to sever the drug charges for one alleged buyer, . . . Johnson, from the rest of the case, and in failing to appeal the denial of the motion to sever that he did file because the alleged drug sales, especially to Johnson, had little or nothing to do with the drug delivery resulting in death charge?

2. Should [T]rial [C]ounsel have requested either the standard accomplice/polluted source instruction or a modified version of the instruction where the key witness against Corbett was a testifying co-defendant who received an incredibly favorable deal from the Commonwealth in this homicide case in exchange for her testimony?

3. Should [T]rial [C]ounsel have objected to hearsay testimony from the second cooperator, . . . Johnson, to the effect that she could purchase drugs from Corbett using the same phone number that the other cooperator used given that the unfair prejudice of this inadmissible hearsay substantially outweighed any probative value with respect to the effect on the listener or the investigation?

4. Was [Trial C]ounsel ineffective at sentencing where he failed to object to the trial court's unsupported finding that Corbett should receive a more severe sentence because he sold drugs only for profit and was not a drug user himself given that the evidence showed Corbett was in fact a drug user who sold drugs to support his own addiction, and relatedly, should trial counsel have presented mitigation evidence such as the testimony from family and friends where such evidence was available?

Corbett's Brief at 4-5.

In his first issue, Corbett avers Trial Counsel was ineffective for: (1) not moving to sever the charges relating to Johnson's controlled drug purchases; and (2) not appealing the denial of severance of the charges related to Decedent's death. We first review the applicable standard of review:

> "On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." "[Our] scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level."

***Commonwealth v. Lawrence***, 165 A.3d 34, 40 (Pa. Super. 2017) (citations omitted).

"Counsel is presumed effective; thus, [a petitioner] has the burden of proving otherwise." ***Id***.

> To prevail on his ineffectiveness claims, [a petitioner] must plead and prove by a preponderance of the evidence that (1): the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) [the petitioner] suffered prejudice because of counsel's action or inaction. With regard to the [reasonable basis] prong, we will conclude that counsel's chosen strategy lacked a reasonable basis only if [the petitioner] proves that an alternative not chosen offered a potential for success substantially greater than the course actually

pursued. To establish the [prejudice] prong, [the petitioner] must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction.

*Id*. at 41 (citation omitted). "The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail." *Commonwealth v. Davis*, 262 A.3d 589, 595-96 (Pa. Super. 2021).

With respect to the severance of charges, this Court has stated:

["]A motion for severance is addressed to the sound discretion of the trial court, and . . . its decision will not be disturbed absent a manifest abuse of discretion." Pennsylvania Rule of Criminal Procedure 583, Severance of Offenses or Defendants, provides[:] "The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together."

> The prejudice of which Rule 583 speaks is . . . that which would occur if the evidence tended to convict the appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

> * * * *

> Normally, evidence that a particular defendant committed a prior crime is admissible only where it tends to prove (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others, or (5) to establish the identity of the person charged with the commission of the crime on trial. . . .

> [T]he denial of a motion for severance is not an abuse of discretion if the facts and elements of the two crimes are

- 10 -

easily separable in the minds of the jurors and if the crimes are such that the fact of commission of each crime would be admissible as evidence in a separate trial for the other.

*Commonwealth v. Brown*, 186 A.3d 985, 993-94 (Pa. Super. 2018) (citations omitted).

On appeal, Corbett avers that "[t]his case was essentially three cases:" (1) his alleged March 2018 sale of heroin to Hess, and Hess' reselling of the heroin to Decedent, who then died of an overdose; (2) Corbett's sales of heroin to Hess; and (3) his sales of heroin to Johnson. Corbett's Brief at 20. Corbett asserts that: (1) "Johnson had absolutely nothing to do with the case involving Hess or the . . . the homicide;" and thus (2) the "evidence in a trial involving just the charges with Johnson," which itself was "attenuated," "would not have been admissible in a separate trial involving Hess or" Decedent. *Id*. at 24, 26, 32. Corbett contends that "the Commonwealth was able to smear [him] as a drug dealer by consolidating the cases." *Id*. at 25-26. For the same reasons, Corbett claims Trial Counsel had no reasonable basis for not seeking to sever the Johnson-related charges, and in not appealing the denial of severance of the Decedent-related charges. Finally, Corbett avers that the evidence — that Decedent died of an overdose, and that Hess purchased drugs from Corbett and "was very involved with Corbett's business in that she travelled to New York with him to test the drugs" — "was all incredibly prejudicial." *Id*. at 25. Corbett concludes that had he "been charged separately with the three separate offenses, there is a reasonable probability

that the verdict would have been different," and "[t]he jury would have had to evaluate Hess'[] credibility on its own without being bolstered by the alleged sales to Johnson." *Id*. Relatedly, Corbett insists that "Hess had major credibility issues." *Id*. at 25. For the foregoing reasons, Corbett argues the PCRA court erred in denying relief on this ineffectiveness claim.

After careful review of the record, the parties' briefs, and the relevant law, we affirm on the basis of the well-reasoned opinion of Judge Kraft, which we incorporate herein. *See* PCRA Court Opinion, 5/12/25, at 22-25 (finding: (1) there was no arguable merit to Corbett's claim, where the first sale involving Johnson occurred contemporaneously with the two sales to Hess,[6] and the second sale to Johnson, "less than two months later, was clearly part of the ongoing investigation against" Corbett, "[t]his case amounted to one large investigation [into Corbett's] drug dealing," and "[e]vidence of all of [Corbett's] drug dealing activity was admissible to prove the corrupt organizations and conspiracy to corrupt organizations charges and vice versa;" (2) Trial Counsel had a reasonable basis for not seeking the severance, where he believed that Johnson's controlled buys were part of the investigation of the drug delivery resulting in death charge, and the Commonwealth would have successfully cited "the entire history of the alleged

_____

[6] The PCRA court specified that the two sales to Hess occurred on August 28 and 29, 2018, and one sale to Hess occurred on August 29, 2018. *See* PCRA Court Opinion, at 5/12/25, 22.

crime;" and (3) "there was no undue prejudice from a lack of severance," where the jury returned not-guilty verdicts on the charges related to Decedent's death and thus was "clearly capable of independent evaluation of the charges [without] confusion"). Accordingly, we determine no relief is due on Corbett's first issue.

In his second issue, Corbett avers Trial Counsel should have requested an accomplice/polluted source jury instruction. This Court has stated:

> It is well settled that whether to request additional points for charge is one of the tactical decisions "within the exclusive province of counsel." We should not invade that province and declare counsel ineffective if any reasonable basis for counsel's decision existed at the time of trial. Rather, we should scrupulously follow the presumption that attorneys act in the interests of their clients, and insist that [a petitioner] meet his burden of proving that his attorneys had no reasonable basis for their action.
>
> [T]he standard charge for accomplice testimony[7 is] commonly referred to as the corrupt and polluted source charge.[] ["I]n any case where **an accomplice implicates the defendant**, the judge should tell the jury that the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution." . . . "If the evidence is sufficient to present a jury question with respect to whether the prosecution's witness was an accomplice, the defendant is entitled to an instruction as to the weight to be given to that witness's testimony."

---

7 The standard jury instruction: (1) begins with a definition of the term "accomplice;" and (2) instructs the jury to find whether the witness "was an accomplice **in the crime charged**" and if so, to "apply . . . special rules to [their] testimony," including, *inter alia*, "view[ing] the testimony . . . with disfavor because it comes from a corrupt and polluted source." Pa. SSJI (Crim), § 4.01 (emphasis added).

- 13 -

"The 'corrupt source' charge in particular is designed specifically to address situations where one accomplice testifies against the other to obtain favorable treatment. It directs the jury to view the testimony of an accomplice with disfavor and accept it only with care and caution."

***Lawrence***, 165 A.3d at 44-45 (citations and footnote omitted and emphasis added).

On appeal, Corbett first avers: "Hess was obviously an ***alleged*** accomplice. She and Corbett were both charged with conspiracy, she testified that she purchased drugs from Corbett and sold them to [D]ecedent, and she allegedly worked with the police to conduct two controlled buys of heroin from Corbett." Corbett's Brief at 34-35. However, Corbett claims, "[t]o avoid the 47-year sentence that Corbett received, [Hess] decided to save herself by testifying on behalf of the Commonwealth," and thus the jury should have received the accomplice/polluted source instruction. ***Id***. at 36. Corbett further avers that Trial Counsel's decision, to not request the instruction, was not reasonable. In support, Corbett reasons that: (1) the instruction does not require the jury to find the witness was an accomplice of the ***defendant***; and (2) accordingly, Trial Counsel could have requested "a slight modification of the instruction," namely a suggestion "that the defendant is [not] in fact part of the crime, but . . . instead [the instruction is] simply a guide for how to view the testimony of someone who has claimed to be an accomplice in the crime." ***Id***. at 36-37. Finally, Corbett claims prejudice, as "Hess was by far the Commonwealth's most important witness[, s]he identified Corbett as the

- 14 -

person who sold the drugs to her that she re-sold to [D]ecedent[, and] she testified that she purchased heroin from Corbett as part of the controlled buys." *Id*. at 42. Corbett maintains that Hess "had serious credibility issues." *Id*. at 43.

After careful review of the record, the parties' briefs, and the relevant law, we affirm on the basis of the well-reasoned opinion of Judge Kraft, which we incorporate herein. *See* PCRA Court Opinion, 5/12/25, at 15-16 (finding: (1) Trial Counsel, who had "vast experience with not only criminal jury trials but[ also] with the character and any peculiarities of York County juries," had a reasonable basis for declining the instruction; and (2) the PCRA court "cannot say that that . . . giving the . . . instruction would have led to a *substantially* greater chance of success," especially where "[t]he jury head extensively about . . . Hess' favorable agreements in exchange for her testimony against" Corbett).

We further conclude that Corbett has failed to show his underlying claim had arguable merit. His insistence — that the instruction does not require the subject witness to be an accomplice of the *defendant* but instead may be an accomplice with anyone, including unnamed persons — is mistaken. As quoted by Corbett both at the PCRA hearing and on appeal, the instruction includes the phrase, "In view of the evidence of [name of accomplice]'s criminal involvement, you must regard [him] [her] *as an accomplice in the crime charged*." N.T., 10/17/24, at 13-14 (emphasis added); Corbett's Brief

at 34 (emphasis added). Thus, the instruction clearly refers to the crimes charged in the matter at hand, and thus necessarily to the defendant at trial. Additionally, as stated above, our case law provides that the instruction applies "where an accomplice implicates **the defendant**." *Lawrence*, 165 A.3d at 44 (emphasis added).

Similarly, Corbett misconstrues the reasonable basis prong of an ineffectiveness claim. We reject his contention that even though Trial Counsel believed the trial court would have rejected modifications of the jury instruction, for the legal reasons given by Trial Counsel, he should nevertheless have requested them. **See** Corbett's Brief at 39. We reiterate that a request for a point for charge is "within the exclusive province of counsel," and we will "not invade that province and declare counsel ineffective if any reasonable basis for counsel's decision existed at the time of trial." *Lawrence*, 165 A.3d at 44. For the foregoing reasons, we determine no relief is due on Corbett's second issue.

In his third issue, Corbett avers Trial Counsel should have objected to Johnson's hearsay statements, as elicited through Detective Glatfelter. This Court has stated: "The admissibility of evidence is within the sound discretion of the trial court, wherein lies the duty to balance the evidentiary value of each piece of evidence against the dangers of unfair prejudice, inflaming the passions of the jury, or confusing the jury." **Commonwealth v. Estepp**, 17 A.3d 939, 945 (Pa. Super. 2011) (citation omitted).

Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. Pa.R.E. 801(c). As a general rule, hearsay is inadmissible as such evidence lacks guarantees of trustworthiness fundamental to the Anglo-American system of jurisprudence. However, "an out-of court statement offered not for its truth but to explain the witness's course of conduct is not hearsay" and thus, is not excludable under the hearsay rule.

*Id*. (some citations omitted).

In ***Commonwealth v. Yates***, 613 A.2d 542 (Pa. 1992), two police officers testified at trial as to why they converged upon a particular city block:

[A]n informant had notified them that a large [B]lack male, *i.e.*, [the defendant], was "dealing drugs" at that location. The trial court [admitted] this testimony on the basis that it was necessary to explain the course of police conduct, reasoning that without the testimony the jury would have had no means of knowing why the police went to [this block]. The court gave a cautionary instruction to the jury, however, stating . . . that the testimony about drug dealing was admitted only to explain why the police went to [that block].

*Id*. at 543. Following the jury's convictions of PWID and possession of a controlled substance, the defendant challenged, on appeal, the admission of the hearsay statements. ***See id***. at 542-43. The Pennsylvania Supreme Court granted relief, reasoning:

The challenged statements . . . were of a highly incriminating sort. They contained specific assertions of criminal conduct, and, despite the cautionary instruction given by the trial court, were likely to have been understood by the jury as providing substantive evidence of guilt. Inasmuch as [the defendant] was charged with possession of cocaine, and possession of cocaine with intent to deliver, the informant's statement to police that [the defendant] was "dealing drugs" would unavoidably have had a prejudicial impact.

- 17 -

*Id*. at 543. The Court also reasoned that the police officers could have instead stated "that they acted 'upon information received.'" *Id*. at 544. The Court held, "We must balance the prejudice arising from statements regarding [the defendant's] drug dealing against the prosecution's need to introduce such statements to explain police conduct." *Id*. The Court thus granted a new trial. *See id*.

Subsequently, in *Estepp*, a police officer testified at trial that "a confidential informant . . . informed police that a 50-year-old white male named 'Vern[,' later determined to be the defendant,] sold prescription drugs out of his residence on 2828 Agate Street." *Estepp*, 17 A.3d at 944-45. "As a result, [the officer] arranged for a different informant to make a controlled drug buy at this location." *Id*. at 942. The defendant objected, and the Commonwealth responded "that the admission of this evidence would be used solely to explain [the officer's] course of conduct." *Id*. at 945. The trial court permitted the testimony, but instructed the jury to consider the confidential informant's statement solely "to help explain why [the] officer did what he did in the course of conduct of his investigation." *Id*. The jury found the defendant guilty of, *inter alia*, PWID. *See id*. at 942. On appeal to this Court, the defendant argued that the officer's testimony included "inadmissible hearsay that the Commonwealth offered as substantive evidence of guilt to convince the jury that [he] had a criminal propensity to sell drugs." *Id*. at 945. This Court denied relief, on the ground the defendant presented no

evidence to rebut the presumption that the jury followed the court's instruction. *See id*. at 945-46.

In the instant appeal, Corbett objects to Detective Glatfelter's testimony that Johnson told him that she could buy heroin from Corbett, and that she described Corbett and his car and provided his address and telephone number. Corbett avers that Trial Counsel's failure to object to this hearsay testimony "allowed [Detective Glatfelter] to testify that Johnson would have identified [him] as a drug dealer," and "[t]his testimony helped to prove the drug delivery and corrupt organizations charges." Corbett's Brief at 46. Corbett contends Trial Counsel was mistaken in believing the trial court would have admitted the testimony under the *res gestae* exception, because "the unfairly prejudicial impact greatly outweighed any probative value." *Id*. at 47. Relatedly, Corbett reasons that the PCRA court erred in finding the hearsay was admissible to show why the police undertook certain action. Corbett relies on *Yates*, which stated: "[I]t cannot be said that every out-of-court statement having bearing upon subsequent police conduct is to be admitted," as some "statements will be considered by the jury as substantive evidence of guilt." *Id*. at 53. Finally, Corbett maintains that he suffered prejudice, as "unlike Hess, Johnson [did not] testify, [and] the police did not record any of her calls, [nor] capture any hand-to-hand exchanges in the photographs," yet Detectives Glatfelter and Monte "were allowed to testify that Johnson . . . regularly purchase[d] drugs from Corbett." *Id*. at 55.

In denying relief on Corbett's ineffectiveness claim, the PCRA court acknowledged that in *Yates*, the Pennsylvania Supreme Court determined that the hearsay statements were "highly incriminating" and thus "likely to have been understood by the jury as . . . substantive evidence of guilt." PCRA Court Opinion, 5/12/25, at 27. However, the PCRA court also emphasized that *Yates* "did not overrule the police conduct rule[,] but rather . . . reminds courts that there are limitations." *Id*. at 28. The court then observed that subsequent decisions, including *Estepp*, "decided decades after *Yates*," "clearly recognized the admissibility of such statements with a cautionary instruction to the jury," and "demonstrate[d] the give and take tension that is the nature and design of our adversarial system." *Id*. at 30-31.

After careful review, we determine the record supports the PCRA court's denial of relief. *See Lawrence*, 165 A.3d at 40. The PCRA court aptly pointed out that *Yates* did not announce a *per se* rule prohibiting all statements from a confidential informant to a police officer, which could explain the officer's subsequent actions. Instead, *Yates* cautions a court to "balance the prejudice arising from statements regarding [a defendant's] drug dealing against the prosecution's need to introduce such statements to explain police conduct." *Yates*, 613 A.2d at 544.

Additionally, Corbett ignores that regardless of Detective Glatfelter's testimony as to what Johnson told him, there was ample evidence that he sold heroin to Johnson on two occasions. The detective clearly testified that: he

observed Corbett drive past him to meet Johnson; after the transaction, Corbett walked by him; and other officers also observed Corbett travelling to meet Johnson. With respect to Johnson's second controlled purchase, Detective Monte testified that he observed a Black male approach Johnson, walk with her, and then enter a BMW. Other officers followed the BMW after the transaction, observed Corbett, who was the sole occupant, exit the BMW, and photographed him. Corbett makes no argument that these additional observations were not admissible at trial. In light of the foregoing, we conclude that Corbett has not established prejudice in his ineffectiveness claim. As Corbett fails to meet this prong, his entire ineffectiveness claim fails. **See Davis**, 262 A.3d at 595-96. Accordingly, his third issue warrants no relief.

In his final issue, Corbett avers Trial Counsel was ineffective for not objecting to the trial court's statement, at sentencing, that he sold drugs solely for profit and not to support his own drug use. Corbett asserts that the trial court imposed "an extreme sentence in significant part because of" this view. Corbett's Brief at 56. He maintains, however, that the PSI showed he "had a serious addiction to . . . marijuana and crack cocaine," "a very addictive drug." **Id**. Corbett insists that Trial Counsel "did nothing to correct the record." **Id**. at 58. With respect to Trial Counsel's explanation that Corbett's proposed argument would have been inconsistent with Corbett's denial of selling drugs at all, Corbett reasons: "[C]ounsel is not bound by what his client told him."

*Id*. at 60. Furthermore, Corbett contends that his witnesses at the PCRA hearing "would have testified on his behalf at sentencing and provided mitigation" evidence, namely "a very different picture of [him] from that presented at the . . . sentencing hearing." *Id*. at 56-57.

After careful review of the record, the parties' briefs, and the relevant law, we affirm on the basis of the well-reasoned opinion of Judge Kraft, which we incorporate herein. *See* PCRA Court Opinion, 5/12/25, at 33-36 (reasoning: (1) "it is simply beyond cavil that [the trial court] was aware of [Corbett's] supposed daily crack cocaine usage," as the court stated it reviewed the PSI; (2) at sentencing, the court referred to Corbett's own statements that he "last used" marijuana and crack cocaine "several years ago," and "that he was able to beat his drug addiction himself while . . . incarcerated;" (3) thus, any objection to the court's "characterization of [Corbett] as not having a drug problem would have been overruled;" (4) Corbett did not tell Trial Counsel that he sold drugs to support his own drug use; (5) in any event, a claim that Corbett sold drugs to fund his own drug use would have been "in stark contrast to his claim that he was not selling drugs;" (6) in imposing sentence, the trial court clearly stated its concerns with Corbett's "many failings," threat to the safety of the community, "lack of rehabilitative potential based upon his record," "callous disregard for the humanity of . . . Hess, upon whom Corbett tested drugs," and "sadistic and . . . unfeeling nature of such acts;" (7) the PCRA hearing testimony of Corbett's

friend, Serena Schmuck, that she and Corbett previously sold drugs to support their drug habits, "was at [also] odds with [Corbett's] entire defense that he had not sold drugs;" and (8) any "[g]eneral platitude[] about what a good person [Corbett] was towards his loved ones and friends would not have moved the needle").

Specifically, we also reject Corbett's claim that Trial Counsel lacked a reasonable basis for not raising the desired argument at sentencing. Trial Counsel clearly explained why he did not object to the trial court's statement that Corbett sold drugs for profit and not to support his own drug use — because (1) their entire trial theory was that Corbett did not sell drugs at all and Hess was lying; and (2) Corbett did not make any statement to counsel that he in fact did sell drugs and that it was to support his drug habit. Corbett's present disagreement with Trial Counsel's rationale is insufficient to show counsel lacked a reasonable basis at the time of sentencing.

Finally, we emphasize that Corbett ignores his far-reaching challenges to the discretionary aspects of his sentence on direct appeal. Previously, Corbett argued to this Court that the trial court: misapplied the sentencing guidelines; erred in directing his sentences to run consecutively, as "the four drug sales occurred over a brief time period;" failed to state a sufficient reason on the record for imposing an aggravated-range sentence on corrupt organizations; miscalculated the offense gravity scores of his PWID offenses, based on the weight of the drugs; considered improper factors by "improperly

double count[ing] his prior record when it was already taken into account in the sentencing guidelines;" improperly found that he lacked remorse, as such a finding "contravened his right to remain silent; and mistakenly found that he "transported drugs across state lines when that was finding was contradicted by Hess's testimony that she did not see the drugs that Corbett brought back . . . from New York City." *Corbett*, 279 A.3d 1280 (unpublished memorandum at 13-22). This Court's discussion of Corbett's sentencing claims spanned eleven pages and addressed the merits of each of the above claims. This Court further opined:

> In sum, we determine that the trial court adequately stated the reasons for its sentence and did not rely on improper factors. Moreover, in light of the trial court's consideration of the guidelines and the PSI, its opportunity to observe Corbett and its familiarity with his history and characteristics, and the court's proper application of the guidelines to this case, including its well-explained decision to sentence in the aggravated range on the corrupt organizations count, we do not find that the sentences imposed here were "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2). Therefore, Corbett's discretionary sentencing issues lack merit, and we affirm his judgment of sentence.

*Id*. at 23. Against this background, Corbett's present challenge to one additional, previously un-addressed comment at sentencing, is meritless. We conclude the record supports the PCRA court's denial of relief on Corbett's final ineffectiveness claim.

In sum, we determine none of Corbett's claims merit relief. We affirm the denial of his PCRA petition on the basis of the PCRA court's opinion and the reasons set forth above. We direct the parties and PCRA court to attach

a copy of the PCRA court's May 12, 2025 opinion to this memorandum in the event of further proceedings.

Order affirmed.

Judge King joins this decision.

Judge Olson concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/26/2026